**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 14 2014, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEIDRE L. MONROE**
Lake Superior Court, Juvenile Division
Public Defender's Office
Gary, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) ) | |
| G.V. (Minor Child) | ) ) | |
| And | ) ) | |
| M.V. (Mother), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 45A03-1312-JT-502 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) | |

**August 14, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-Respondent M.V. (Mother) appeals the decision of the juvenile court terminating her parental rights with regard to G.V. Mother contends that the Appellee-Petitioner Indiana Department of Child Services (DCS) presented insufficient evidence to show that the conditions leading to G.V.'s removal would not be remedied, that Mother posed a threat to G.V.'s well-being, and that the termination of her parental rights is in G.V.'s best interests. Finding sufficient evidence to support the termination of Mother's parental rights, we affirm the judgment of the juvenile court.

FACTS

G.V. tested positive for trace amounts of marijuana when he was born on February 2, 2012. Mother also tested positive for marijuana. DCS allowed Mother to take G.V. home from the hospital; however, the infant was removed from Mother on March 5, 2012, after his meconium tested positive for THC. Mother also tested positive for THC and cocaine at the time of G.V.'s removal.

G.V. was adjudicated to be a Child in Need of Services in April 2012. In May 2012, Mother pleaded guilty to November 2011 theft charges and was sentenced to one year in the Lake County Work Release Program at the Kimbrough Center and one year of probation. Mother participated in many programs at the Kimbrough Center, including parenting classes and a substance abuse education program. Despite her participation in these programs, following her October 2012 release from Kimbrough, Mother tested positive for marijuana. Mother also tested positive for marijuana in November 2012.

DCS filed a petition to terminate Mother's parental rights in April 2013. Testimony at the December 2013 termination hearing revealed that Mother participated in an intensive substance abuse inpatient program in July 2013 and then tested positive for marijuana in August 2013, which was a probation violation. The testimony further revealed that Mother had prior convictions for battery, obtaining a controlled substance by forgery, and theft, as well as recent convictions for operating a vehicle while intoxicated and possession of marijuana. She also had pending charges for three counts of conversion, operating while intoxicated, and resisting law enforcement.

At the time of the hearing, Mother was back at the Kimbrough Center with an anticipated release in March 2014. She did not have housing or employment, and she testified at the hearing that she was unable to care for G.V. She had not visited with her child since February 2013.

G.V., who has been in foster care with Mother's cousin for almost two years, has problems with his hearing and balance, which have required several surgeries. He was

scheduled for an additional surgery for an ear infection at the time of the termination hearing. According to DCS case worker Darren Washington, G.V.'s foster mother "has definitely been on target when there have been problems with him to take care of him." Tr. p. 61. The DCS plan is for foster mother to adopt G.V.

On December 4, 2013, the juvenile court issued an order terminating Mother's parental relationship with G.V. Mother now appeals the termination.

## DISCUSSION AND DECISION

The traditional right of parents to establish a home and raise their child is protected by the Fourteenth Amendment to the United States Constitution. Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). However, parental rights may be terminated when parents are unable or unwilling to meet their parental responsibilities. Id. The purpose of terminating parental rights is not to punish the parent but to protect the child. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

In reviewing the termination of parental rights, we will neither reweigh the evidence nor judge the credibility of witnesses. Id. We consider only the evidence most favorable to the judgment that supports the trial court's decision and the reasonable inferences drawn from that evidence. Id. In deference to the trial court's unique position to assess the evidence, we set aside the judgment terminating a parent-child relationship only if it is clearly erroneous. Id. If the evidence and inferences support the trial court's decision, we must affirm. Id.

4

When DCS seeks to terminate parental rights, it must plead and prove by clear and convincing evidence:

(A)     that one (1) of the following is true:

   (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
   . . . .

(B)     that one (1) of the following is true:

   (i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

   (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
   . . . .

(C)     that termination is in the best interests of the child; and

(D)     that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2); In re I.A., 934 N.E.2d 1127, 1133 (Ind. 2010).

Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she first contends that there is insufficient evidence to show that there is a reasonable probability that the conditions that resulted in G.V.'s removal or the reasons for placement outside the home will not be remedied and that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to G.V.'s well-being.

5

Because subsection (b)(2)(B) is written in the disjunctive, DCS need prove only one of the two requirements in subsection (B). Id. As we find it to be dispositive under the facts of this case, we consider only whether DCS established there was a reasonable probability that the conditions resulting in the removal or reasons for placement of G.V. outside the home would not be remedied.

To make this determination, the trial court should judge a parent's fitness to care for her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001). The trial court must also evaluate a parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. In re A.B., 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Among the circumstances that the trial court may properly consider are a parent's criminal history, drug and alcohol abuse, historical failure to provide support, and lack of adequate housing and employment. McBride v. Monroe County Office of Family and Children, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). The Indiana Supreme Court has explained that we entrust that delicate balance to the trial court, which has the discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. In re E.M., 4 N.E.3d 636, 643 (Ind. 2014). Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best indicator of their future behavior. Id.

Here, Mother has consistently demonstrated an inability to stop using illegal drugs, to avoid arrest and incarceration, and to provide her son with the safe, stable, and

6

drug-free environment that he needs. Mother has consistently shown her disdain for the criminal justice system by violating terms of probation. We find sufficient evidence that there is a reasonable probability that the conditions that resulted in G.V.'s removal will not be remedied.

Mother also contends that there is insufficient evidence that termination of the parent-child relationship is in G.V.'s best interests. A parent's historical inability to provide adequate housing, stability, and supervision coupled with a current inability to do the same supports a finding that termination of parental rights is in the best interests of the child. Lang v. Starke County Office of Family and Children, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007). Here, Mother has historically been unable to provide adequate housing, stability and supervision. Further, testimony at the termination hearing reveals that she is currently unable to provide the same. We therefore find sufficient evidence that termination of the parent-child relationship is in G.V.'s best interests.

## CONCLUSION

We reverse a termination of parental rights "only upon a showing of 'clear error' – that which leaves us with a definite and firm conviction that a mistake has been made." Egly v. Blackford County Department of Public Welfare, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here.

Affirmed.

KIRSCH, J., and ROBB, J., concur.

7